Filed 8/12/22 Srabian v. Triangle Truck Center CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LUCILLE SRABIAN et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>        v.<br><br>TRIANGLE TRUCK CENTER et al.,<br><br>    Defendants, Cross-complainants and Appellants. | F080066<br><br>(Super. Ct. No. 15CECG00439)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Kimberly A. Gaab, Judge.

Channaveerappa & Phipps, Naresh Channaveerappa and Albert Lee for Defendants, Cross-complainants and Appellants.

Law Office of Armand Tinkerian and Armand Tinkerian for Plaintiffs, Cross-defendants and Respondents.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

Twin Falls Enterprises, Inc., doing business as Triangle Truck Center (Triangle) and Larry Buehner (Buehner) (collectively, appellants) were jointly represented codefendants and cross-complainants in a suit over the alleged conversion of a set of truck trailers brought by respondents Morris and Lucille Srabian (collectively, respondents).[1] Respondents obtained a jury verdict against Buehner while the jury found Triangle was not liable on any claims, and a directed verdict was entered against appellants on their joint cross-complaint against respondents. Both Triangle and respondents sought an award of costs, and appellants and respondents each filed motions to strike or tax each other's costs.

The trial court granted Triangle's motion to strike respondents' memorandum of costs[2] after finding Triangle was the prevailing party between itself and respondents but denied Buehner's motion to strike after finding respondents were prevailing parties over Buehner and respondents' cost memorandum substantially complied with procedural requirements. The trial court partially granted Buehner's motion to tax respondents' costs. After supplemental briefing, the trial court denied respondents' motion to strike Triangle's cost memorandum and partially granted their motion to tax Triangle's costs.

Buehner and Triangle jointly appeal the trial court's orders. Buehner claims the trial court erred in denying his motion to strike respondents' cost memorandum and, alternatively, argues the trial court abused its discretion by failing to grant his motion to tax certain cost items. Triangle contends the trial court erred in granting respondents' motion to tax Triangle's costs.

---

[1]    Morris Srabian passed away on January 23, 2020, after commencement of this appeal. On November 10, 2020, this court granted Lucille Srabian's motion to be appointed Morris Srabian's successor in interest. (Code Civ. Proc., § 377.32.) Undesignated statutory references are to the Code of Civil Procedure.

[2]    A memorandum of costs is sometimes referred to as a cost memorandum or cost bill.

We conclude the trial court did not err in denying Buehner's motion to strike respondents' costs. As to the order taxing respondents' cost memorandum, we conclude respondents' costs should have been taxed in the amount of $27,235.98, for a total cost award of $24,660.59. As to the order taxing Triangle's cost memorandum, we conclude Triangle's costs should have been taxed in the amount of $53,723.08, for a total cost award of $7,411.33. The trial court's July 31, 2019 and August 29, 2019 orders and judgments shall be modified accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the parties' dispute over the purchase, ownership, and possession of 10 sets of truck trailers. Respondents filed suit against Triangle and Jerry Chiarito, among several others, on February 10, 2015, alleging claims for conversion and elder abuse. Chiarito filed a cross-complaint against respondents for breach of a joint venture and other related claims.

Respondents amended their complaint in January 2017, adding a claim for treble damages under Civil Code section 3345. In March 2017, respondents filed a doe amendment naming Buehner, Triangle's president, as a defendant. Triangle and Buehner, who were jointly represented, filed a cross-complaint against respondents and Chiarito in November 2017 for breach of an oral contract, elder abuse, and declaratory relief. Attorney David Fike, who represented both Chiarito and Triangle prior to May 2017, substituted out as counsel for Triangle and Buehner due to a conflict of interest discovered after Buehner joined the litigation, and Triangle and Buehner's new counsel retook six depositions. Fike withdrew as Chiarito's attorney in January 2018, and Chiarito represented himself through the remainder of the proceedings.

Prior to trial, three other defendants entered into settlement agreements with respondents and were dismissed from the suit. Trial on respondents' complaint against Chiarito, Buehner and Triangle, and on their cross-complaints against respondents, began in September 2018 and lasted 31 court days. The jury reached a special verdict as

3

follows: Chiarito and Buehner were found jointly and severally liable for $60,000 on respondents' conversion claim, which was reduced by $17,000 in offsets for the prior good faith settlements, for a net judgment of $43,000. Chiarito recovered $37,150 on his cross-complaint against respondents. Triangle was found not liable on respondents' claims, and a directed verdict was granted in respondents' favor on Triangle and Buehner's cross-complaint.

Costs and attorneys' fees were sought by respondents and Triangle. Respondents, and Triangle and Buehner jointly, filed motions to strike or tax each other's claimed costs. As pertinent here, appellants argued respondents' cost memorandum should be stricken because Triangle was the prevailing party entitled to costs, not respondents, and respondents' cost memorandum was not verified under penalty of perjury. Following argument at a July 31, 2019 hearing, the trial court adopted its tentative ruling granting Triangle's motion to strike respondents' cost memorandum as Triangle was the prevailing party between it and respondents. The trial court denied Buehner's motion to strike finding: (1) respondents were the prevailing party as they obtained a net recovery against Buehner; and (2) the cost memorandum substantially complied with the verification requirement. The trial court partially granted Buehner's motion to tax respondents' costs: it taxed $17,345.33 in costs and awarded respondents $34,551.24 in costs against Buehner.

The hearing on respondents' motion to strike Triangle's cost memorandum was continued so the parties could provide further briefing as to whether and how Triangle's costs should be apportioned to Buehner as a jointly represented but nonprevailing party. After further briefing and another hearing on August 28, 2019, the trial court taxed Triangle's costs by $53,855.58 and awarded Triangle $7,278.83 in costs.[3]

---

**3** At the conclusion of the August 28, 2019 hearing, the trial court took the matter under submission. The following day, the trial court issued an order adopting its tentative ruling without modifications.

4

Triangle and Buehner appeal both orders.

## **DISCUSSION**

### I.     **General Cost Award Principles and Standards of Review**

Except as otherwise provided, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding. (§ 1032, subd. (b).) To obtain costs, the prevailing party must file and serve a memorandum of costs, which "must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case." (Cal. Rules of Court, rule 3.1700(a)[4].) Copies of bills, invoices, statements, or other documentation need not be attached to the memorandum (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1267), but the memorandum must provide enough detail to determine the cost sought is statutorily awardable (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 132 (*Nelson*) [since cost memorandum did not state how subpoenas were served, it could not be determined from the face of the cost bill whether those items were proper]).

If the items on the face of the cost memorandum appear to be proper charges, the verified cost memorandum is prima facie evidence of their propriety, and it is the challenging party who bears the burden to show the costs were not reasonable or necessary. (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774.)

To challenge costs, a party must file a motion to strike or tax the costs. A motion to tax costs that disputes the nature or amount of particular costs generally must be supported by declarations. (*County of Kern v. Ginn* (1983) 146 Cal.App.3d 1107, 1113–1114.) Conclusory statements in a memorandum of points and authorities or a counsel's declaration will not suffice. (*Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 266 [conclusory statements in brief and declaration that certain costs were included to circumvent settlement agreement in other cases insufficient to rebut

---

**4**     Further references to rules are to the California Rules of Court.

verified cost bill].)  The mere filing of a motion to tax costs may be a proper objection to an item if the necessity of that item appears doubtful, does not appear to be proper on its face (*Nelson*, *supra*, 72 Cal.App.4th at p. 131), or presents a legal question (*Fennessy v. Deleuw-Cather Corporation* (1990) 218 Cal.App.3d 1192, 1195–1996 [motion to tax questioning entitlement to deposition costs incurred by all six defendants represented by the same counsel was sufficient to place the cost at issue without additional declarations or affidavits]).  If section 1033.5 expressly allows the particular item and it appears proper on its face, the burden is on the objecting party to show the costs to be unnecessary or unreasonable.  (*Nelson*, at p. 131.)

If costs are properly placed at issue, the burden of proof shifts to the party seeking costs to justify them by providing evidence and supporting documentation that the costs were reasonable and necessarily incurred.  (*Ladas v. California State Auto. Assn.*, *supra*, 19 Cal.App.4th at p. 774; see *Jones v. Dumrichob*, *supra*, 63 Cal.App.4th at p. 1267.)

Section 1033.5 lists the items allowable as costs and those that are not.  Allowable costs must be "reasonably necessary to the conduct of the litigation" and "reasonable in amount."  (§ 1033.5, subd. (c)(2)–(c)(3).)  The trial court has broad discretion to determine what costs were reasonably necessary to the conduct of the litigation and whether they were reasonable in amount. (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 541; § 1033.5, subd. (c)(2).)  Whether a cost item was reasonable in amount and reasonably necessary to the litigation are questions of fact for the trial court and its decision is reviewed for an abuse of discretion.  (*Berkeley Cement, Inc. v. Regents of University of California* (2019) 30 Cal.App.5th 1133, 1139, 1140; *Doe v. Los Angeles County Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 693.)  The trial court's exercise of that discretion will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice.  (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512.)  If the issue

6

is one of statutory construction, however, it presents an issue of law that is reviewed de novo. (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 658.)

## II. Order Awarding Respondents' Costs Against Buehner

Respondents' cost memorandum, which was submitted on Judicial Council Forms, form MC-010,[5] sought a total of $51,896.57: $2,499.80 for filing and motion fees; $2,263.40 for jury fees; $12,371.45 for deposition costs; $9,482.95 for service of process costs; $18,047.90 for court reporter fees; and $7,231.07 for models, enlargements, and photocopies of exhibits. No exhibits were attached to the cost memorandum and the amounts sought were not broken down. Respondents' trial attorney signed the cost memorandum below the following preprinted statement: "I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case."

Appellants filed a motion to strike respondents' cost memorandum on the grounds respondents were not the prevailing parties because Triangle was the mandatory prevailing party and the cost memorandum was not verified under penalty of perjury, in violation of rule 3.1700(a)(1). In their alternative motion to tax costs, appellants challenged the propriety of certain costs.

In opposing the motions, respondents argued they were the prevailing party against Buehner because they obtained a net monetary recovery, and the cost memorandum was properly verified because it contained the exact language required by rule 3.1700(a)(1). To support their claimed costs, respondents submitted the declaration of their trial attorney, Jeff Reich, in which he declared that an attached nine-page exhibit, labeled "Exhibit 1," was his law firm's final billing listing all the costs incurred in the action, the exhibit accurately reflected the costs incurred in the case, and the bills were necessary and proper expenses incurred in representing respondents in the action.

---

[5] Further references to forms are to Judicial Council forms.

7

Respondents also submitted Lucille Srabian's declaration, in which she stated true and correct copies of "costs, bills, invoices and expenses" that respondents incurred in the action were attached as "Exhibit 2," which is comprised of approximately 175 pages of invoices.

In its tentative ruling, which the trial court adopted as its order following oral argument, the trial court denied the motion to strike respondents' cost memorandum against Buehner, finding: (1) respondents were the prevailing party as between themselves and Buehner, since respondents had the net monetary recovery; and (2) while the cost memorandum did not include the words "under penalty of perjury," Buehner had not identified any prejudice from the omission and, in any event, the signature block substantially complied with rule 3.1700(a)(1). As for Buehner's motion to tax costs, the trial court taxed the jury fees $149.93 and court reporter costs $17,195.40 but declined to tax the other costs. The trial court accordingly awarded respondents $34,551.24 in costs against Buehner.

On appeal, Buehner argues the trial court erred in denying his motion to strike and, alternatively, erred in declining to tax cost certain cost items. We address each motion below.

### A.      *The Motion to Strike*

#### 1.      **Verification of the Cost Memorandum**

We first address Buehner's contention respondents' cost memorandum did not comply with applicable verification requirements because it was not signed under penalty of perjury. Buehner claims the language utilized on form MC-010 is insufficient because rule 3.1700(a)(1) states the "memorandum of costs must be verified" and the word "verified" means signed under penalty of perjury as provided in section 2015.5. According to Buehner, the language on form MC-010 does not even substantially comply with rule 3.1700(a)(1)'s verification requirement. Buehner notes the Judicial Council's

8

mandatory form for seeking costs on appeal (form APP-013), the procedure for which is also governed by rule 3.1700(a)(1), *does* contain a penalty-of-perjury recital.[6]

Respondents maintain the trial court did not abuse its discretion in refusing to strike the memorandum because it was properly verified or, at the very least, it substantially complied with rule 3.1700(a)(1). Respondents point out the memorandum was signed and submitted with the required statement on optional form MC-010 that contains no penalty-of-perjury recital. In fact, respondents note, as far back as 1999, this form has not contained such a recital, and it has never been incorporated into any subsequent revisions to the form. Respondents assert the consistent lack of a penalty-of-perjury recital on the form, even after revisions, reflects the Judicial Council's interpretation of its own rule.[7]

We agree with respondents. Section 1034, subdivision (a) provides: "Prejudgment costs allowable under this chapter shall be claimed and contested in accordance with rules adopted by the Judicial Council." The rule the Judicial Council adopted, rule 3.1700(a)(1), provides in relevant part: "A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk …. The memorandum of costs *must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case*." (Italics added.) Respondents clearly complied with the verification requirement of rule 3.1700(a)(1) when their attorney signed under the statement on form MC-010 that contained the italicized language.

---

[6] We grant appellant's June 10, 2021, request for judicial notice of form APP-013, revised January 1, 2016.

[7] This court previously granted respondents' April 5, 2021, request for judicial notice of form MC-010, revised July 1, 1999.

Judicial Council rules have the force of statutes so long as they are not inconsistent with legislative enactments or constitutional provisions. (*In re Richard S.* (1991) 54 Cal.3d 857, 863.) Section 2015.5 is not inconsistent, as it merely provides, in relevant part: "Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter *may* with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California." (Italics added.)

By its terms, section 2015.5 is permissive, as it allows or permits a verification requirement to be complied with by the described statement under penalty of perjury. Section 2015.5, however, does not prescribe the sole necessary form of a verification.[8] As the Legislature expressly directed the Judicial Council to adopt rules for claiming and contesting prejudgment costs in section 1034, subdivision (a), and respondents' cost

---

[8] Section 446, subdivision (a) also does not assist Buehner, as it also contains permissive language. That section provides, in relevant part: "A person verifying a pleading need not swear to the truth or his or her belief in the truth of the matters stated therein but *may*, instead, assert the truth or his or her belief in the truth of those matters 'under penalty of perjury.' " (Italics added.)

memorandum complied with the verification requirement found in the rule the Judicial Council adopted, rule 3.1700(a)(1), respondents memorandum was properly verified.[9]

Moreover, respondents ultimately submitted Reich's declaration with their opposition to Buehner's motion to strike, which he made under penalty of perjury, in which he essentially declared the costs incurred were correct and necessarily incurred in the case. Buehner asserts this cannot cure the failure to verify the original cost memorandum under penalty of perjury, as rule 3.1700 requires the prevailing party to serve and file a verified memorandum of costs within 15 days of the mailing of the notice of entry of judgment. While the trial court may extend the time for filing the cost memorandum by no more than 30 days (rule 3.1700(b)(3)), Reich's declaration was filed well after that time and could not correct the purportedly deficient verification in the cost memorandum.

While the time provisions for filing a memorandum of costs are mandatory, they are not jurisdictional. (*Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.* (1990) 223 Cal.App.3d 924, 929.) The verification of the cost memorandum is analogous to a verified complaint, where a defect in the verification is an irregularity that does not affect jurisdiction and may be cured by amendment even when submitted after the statute of limitations has run. (*United Farm Workers of America v. Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915.) Here, even though Reich's declaration with his

---

**9** None of the cases Buehner relies on hold the language required by section 3.1700 is insufficient to verify a memorandum of costs. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836; *Nelson v. Anderson*, *supra*, 72 Cal.App.4th 111; *Rayna R. v. Superior Court* (1993) 20 Cal.App.4th 1398; *Russell v. Trans Pacific Group* (1993) 19 Cal.App.4th 1717, superseded on other grounds as stated in *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1197; *Ladas v. California State Auto. Assn.*, *supra*, 19 Cal.App.4th 761; *People ex. rel. Dept. of Transportation v. Superior Court* (1992) 5 Cal.App.4th 1480; *Appleton v. Superior Court* (1988) 206 Cal.App.3d 632; *Brake v. Beech Aircraft Corp.* (1986) 184 Cal.App.3d 930; *Sheeley v. Santa Clara* (1963) 215 Cal.App.2d 83; *Snodgrass v. Snodgrass* (1930) 103 Cal.App. 412.)

verification of the claimed costs was submitted after the time for filing the memorandum of costs, it related back to the filing of the memorandum, which was timely.[10]

As the cost memorandum properly was verified and, in any event, any deficiency was cured by Reich's later filed declaration, the trial court did not err in denying the motion to strike on this ground.

### 2. Prevailing Party Finding

Buehner contends the trial court's finding respondents were the prevailing party against him is contrary to settled law because there can only be one section 1032 prevailing party and awarding costs to respondents led to an absurd result as he was ordered to pay costs respondents incurred in losing to Triangle. Buehner asserts there is no authority to award costs to a party who did not prevail in the action as a whole and the only party who prevailed in the action as a whole was Triangle.

Section 1032, subdivision (a)(4) defines "prevailing party" for purposes of a statutory award of costs to include "the party with a net monetary recovery" and "a defendant as against those plaintiffs who do not recover any relief against that defendant." (§ 1032, subd. (a)(4).) "[I]n situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs

---

**10** We recognize Reich's declaration was signed, "I declare under penalty of perjury the foregoing is true and correct," and dated, but it did not state next to the date the location in California where it was executed, or that it was executed "under the laws of the State of California" as required by section 2015.5. (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 610–611 (*Kulshrestha*).) Buehner, however, did not object on this basis below; therefore, he forfeited this "technical defect" and the trial court did not err in accepting the declaration. (*Fuller v. Goodyear Tire & Rubber Co.* (1970) 7 Cal.App.3d 690, 693 [lack of objection forfeits claim that declarations are deficient because they fail to specify where they were executed]; accord, *Rader v. Thrasher* (1972) 22 Cal.App.3d 883, 889 [objection that declaration failed to state it was executed within the State of California cannot be raised for the first time on appeal].)

between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (*Ibid.*)

A defendant who defeats the plaintiff's claim on a complaint but recovers nothing on its cross-complaint against the plaintiff is a prevailing party entitled to costs. (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 438.) Thus, Triangle, who prevailed against respondents on their complaint but recovered nothing on its cross-complaint against respondents, was a prevailing party between itself and respondents.

Respondents, however, qualified as a prevailing party under section 1032 in their action against Buehner because they obtained a net monetary recovery against him. As the trial court found, Buehner is jointly and severally liable for the $60,000 judgment respondents obtained against he and Chiarito, less the $20,000 in setoffs resulting from the settlements with other defendants, thereby making respondents the prevailing party against Buehner.

Buehner argues respondents cannot be "the party with a net monetary recovery" because they did not also obtain a net monetary recovery against Triangle. (§ 1032, subd. (a)(4).) In Buehner's view, respondents could not be a prevailing party under section 1032 unless they obtained a net monetary recovery against all defendants. Buehner, however, does not cite any authority to support his contention. To the contrary, a plaintiff who receives a net monetary recovery against one defendant is entitled to costs against that defendant even if a second defendant obtains a judgment against the plaintiff. (*Gibson v. Thrifty Drug Co.* (1959) 173 Cal.App.2d 554, 556 [defendant who obtained directed verdict against plaintiff entitled to costs against plaintiff, while plaintiff who obtained jury verdict against another defendant was entitled to costs against that defendant]; see *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 238, 256–257 [plaintiffs who obtained jury verdict against some defendants but not others entitled to recover costs as a matter of course from the defendants against whom they obtained judgment].)

13

As these cases demonstrate, where there are multiple defendants, each is considered separately when determining who is the prevailing party between the plaintiff and each defendant. This principle also applies to suits involving one defendant and multiple plaintiffs, as demonstrated in *Andersen v. Pacific Bell* (1988) 204 Cal.App.3d 277. There, the defendant obtained summary judgment against multiple plaintiffs, although the action continued as to two plaintiffs. (*Id.* at pp. 281 & 282, fn. 3.) The defendant was entitled to costs as a matter of right from the plaintiffs against whom it obtained summary judgment without regard to any "hypothetical, future right" the remaining plaintiffs might have to recover their costs if they ultimately won. (*Id.* at pp. 286–287.)

These cases show there can be multiple prevailing parties under section 1032 in an action that involves multiple plaintiffs or defendants. While Buehner asserts there can be only one section 1032 prevailing party entitled to mandatory costs, the authorities he cites do not involve multiple plaintiffs or defendants. At best, they stand for the proposition that a single plaintiff and single defendant cannot both be prevailing parties against each other under section 1032. (*McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1454–1455 ["when neither the plaintiff nor the defendant who has filed a cross-complaint prevails, the defendant is the prevailing party entitled to costs"]; Cal. Judges Benchbook: Civil Proceedings – Trial (CJER 2021) Costs, Attorney's Fees, and Interest, § 16.6, p. 948, citing *Sharif v. Mehusa, Inc.* (2015) 241 Cal.App.4th 185, 194 [for cost awards under § 1032, subd. (a)(4), "there is a single prevailing party"; case involved one plaintiff and one defendant].)

Buehner complains that allowing respondents to recover costs against him is unfair because he is required to pay costs respondents incurred in losing to Triangle. But that is not a reason to strike the entire cost bill. Rather, Buehner could challenge certain cost items on the ground he is not liable for costs respondents owe Triangle. (*Gibson v. Thrifty Drug Co.*, *supra*, 173 Cal.App.2d at p. 556 [plaintiff may not recover amounts she

14

is liable for due to an unsuccessful prosecution of an action against a third party as well as against a defendant as to who she is successful].)

In sum, the trial court did not err in finding respondents were the prevailing party against Buehner and denying his motion to strike on that ground.

### B. The Motion to Tax Costs

#### 1. Models, Blowups, and Photocopies of Exhibits

In their cost memorandum, respondents sought an aggregate amount of $7,231.07 for models, blowups, and photocopies. In the motion to tax costs, Buehner's attorney declared respondents did not use any models or blowups at trial and they offered only 497 pages of trial exhibits that were admitted into evidence, which would reasonably cost only $49.70 to photocopy at 10 cents per page. In their opposition to the motion, respondents asserted their cost memorandum identified the amount claimed, which costs were "clearly identified" in the exhibits attached to Lucille's and Reich's declarations.

While Buehner's reply did not address this issue, Buehner's attorney argued at the hearing on the motion that none of the invoices supported the $7,231.07 claimed. The attorney repeated his assertion that approximately 497 pages of actual trial exhibits were used and asked the court to apply a reasonable rate, such as 10 cents per page, for photocopying trial exhibits. The trial court declined to tax these costs, explaining Buehner failed to contest or object to the "extensive documentation" respondents provided.

On appeal, Buehner contends the trial court's order should be reversed because: (1) he was not required to contest or object to the documentation in his reply brief and he objected orally at the hearing; (2) it is undisputed respondents had no models or blowups; and (3) respondents did not refute they offered only 497 pages of trial exhibits or that the reasonable cost to photocopy those pages was 10 cents per page. Buehner asserts a source check of respondents' supporting documents shows there is nothing to support an award for models, blowups, or photocopies of exhibits; therefore, the trial court abused

15

its discretion in declining to tax costs and respondents should be awarded only $49.70 as recoverable costs.

Section 1033.5 expressly allows for the recovery of the costs of "[m]odels, the enlargements of exhibits and photocopies of exhibits … reasonably helpful to aid the trier of fact." (§ 1033.5, subd. (a)(13).) This category of costs is broad and may include items such as photocopying of exhibits, the rental of equipment such as projectors and technicians (*Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1623 [projector]); (*Green v. County of Riverside* (2015) 238 Cal.App.4th 1363, 1373–1374 [technician to "monitor … equipment and quickly resolve any glitches"]), and the creation of videos or PowerPoint presentations and the personnel to support them (*Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1104 [creation of videos]; *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 990–991 [PowerPoint presentations and personnel to support them]).

Respondents' memorandum of costs listed only a cost total for this entire category without providing a single detail. While these costs are expressly allowed by statute, an aggregate dollar amount without any itemization does not provide a basis to conclude the costs are facially proper and reasonable in amount. When it cannot be determined if a cost item is facially proper, the cost memorandum is insufficient to constitute prima facie evidence of the necessity or reasonableness of the cost sought and an objection to such an item, even without supporting evidence, shifts the burden to the party seeking the cost to provide evidence of the cost's reasonableness. (*Nelson*, *supra*, 72 Cal.App.4th at p. 132.) Respondents' cost memorandum was insufficient to constitute prima facie evidence of the necessity or reasonableness of the costs sought and Buehner's objection shifted the burden to respondents to provide evidence of the necessity for and reasonableness of costs.[11]

---

[11] Respondents contend Buehner waived this issue by failing to raise the issue in a timely manner, citing a case that involves invited error, *Van Sickle v. Gilbert* (2011)

16

While respondents provided a summary of expenses in the billing statement attached to Reich's declaration and attached invoices to Lucille's declaration, they did not offer a complete list of the costs claimed in this category or otherwise explain the necessity of the costs. Our review of the invoices does not reveal any charges that would fall within this category and while there are items in the billing statement attached to Reich's declaration that could fall within this category, respondents do not explain how these items were necessary to aid the jury. The trial court placed the burden on Buehner to challenge the invoices, but it was respondents' burden to provide substantiating evidence, not Buehner's. As the cost memorandum did not constitute prima facie evidence of the reasonableness or proper nature of the costs, the trial court erred in declining to tax this cost upon Buehner's objection. (See *Nelson*, *supra*, 72 Cal.App.4th at p. 132; cf. *Benach v County of Los Angeles*, *supra*, 149 Cal.App.4th at pp. 856–857 [court's award of photocopying costs not abuse of discretion because it was supported by cost memorandum and supporting documents].) The cost award of $7,231.07 for models, blowups, and photocopies of exhibits is stricken.

### 2. Deposition Costs

In moving to tax the $12,371.45 in deposition costs respondents were seeking, Buehner's attorney asserted he asked respondents to provide a breakdown of their costs and supporting invoices, but they did not, and without that, he was prevented from providing a detailed explanation why the costs should be taxed. Buehner nevertheless argued the costs were excessive because Triangle paid a higher price for taking and transcribing the depositions, and for original transcripts, because it noticed most of the depositions, and he should not be saddled with deposition expenses incurred prior to his being brought into the action on March 10, 2017.

---

196 Cal.App.4th 1495, 1528. However, Buehner did raise the issue by objecting in his motion to tax costs.

In their opposition, respondents asserted Reich's declaration and accompanying exhibits confirmed the amount sought; the statute does not authorize reduction of costs based on the party' court reporters are not allowed to charge parties different fees for deposition transcripts; and the depositions were necessary to prosecute the case against all parties, including the claims and defenses against Triangle and Buehner.

While Buehner's reply did not address this issue, Buehner's attorney stated at oral argument on the motion that from his detailed review of the invoices, they only supported $9,711.27 in deposition costs. He further argued costs should be apportioned because some were incurred well before Buehner was named as a defendant in March 2017. In declining to tax costs, the trial court explained Buehner failed to provide any further objection in his reply brief after respondents provided support for the deposition costs, respondents argued the deposition costs were necessary for their arguments and preparation for trial, and Buehner did not provide any legal authority for his position that he should not be required to pay costs from before he entered the lawsuit.

On appeal, Buehner argues he was not required to object in his reply brief, and he did object at the hearing by arguing respondents' invoices did not add up to the claimed deposition costs. Buehner asserts the listing of deposition costs attached to Reich's declaration only adds up to $11,651.43, which includes duplicative deposition costs, and when the actual invoices attached to Lucille's declaration are examined, the deposition costs add up only to $9,771.43. Buehner argues because substantial evidence does not support the trial court's ruling, the trial court abused its discretion in declining to tax the deposition costs.

We agree. Respondents' memorandum of costs listed only a total for deposition costs without providing cost details, for example, segregating them by deponent. While these costs are expressly allowed by statute, an aggregate dollar amount without any itemization does not provide a basis to conclude the costs are facially proper and reasonable in amount. Buehner's objection to the costs as excessive therefore placed the

burden on respondents to provide evidence of the reasonableness of the claimed deposition costs. (*Nelson*, *supra*, 72 Cal.App.4th at p. 132.)**12**

While the billing summary attached to Reich's declaration includes deposition costs, and there are deposition invoices attached to Lucille's declaration, respondents did summarize or itemize the deposition costs. The trial court placed the burden on Buehner to point out the deficiencies in the claimed costs once respondents produced the billing summary and invoices, but that was not his burden. Moreover, he did object at the hearing.

The issue before us is whether there is substantial evidence to support the trial court's decision to award $12,371.45 in deposition costs. Buehner points us to the deposition invoices attached to Lucille's declaration, which he asserts adds up to $9,771.43. Our review of those invoices shows they actually add up to $9,711.87. We agree with Buehner the remaining invoices attached to Lucille's declaration are either not for deposition costs or are duplicative. Accordingly, the evidence supports an award of $9,711.87 in deposition costs, not the $12,371.45 claimed by respondents.

Respondents contend Buehner waived this issue by not raising it earlier. Buehner, however, objected to the costs as excessive in his motion to tax costs and at oral argument on the motion. Respondents contend we cannot second guess the trial court's finding they provided support for the deposition costs, citing the abuse of discretion standard articulated in *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339. Our review for whether that support justifies the amount of costs, however, is for substantial evidence. (*Frei v. Davey*, *supra*, 124 Cal.App.4th at p. 1512 [where trial court makes no findings, the reviewing court infers all findings necessary to support the judgment and examines the record to see if substantial evidence supports the implied finding].) We infer from the

---

**12**     Respondents contend Buehner waived this issue by failing to raise the issue in a timely manner, but Buehner did raise the issue by objecting in his motion to tax costs.

19

trial court's ruling that it found the documents respondents provided supported the amount of claimed deposition costs. But, as we have explained, the invoices do not support the total amount claimed. Respondents do not contend otherwise or point us to documents that support an award of additional costs. Accordingly, the trial court erred in not taxing these costs, which should be taxed by $2,659.58 ($12,371.45 minus $9,711.87).

### 3. Filing and Motion Fees and Jury Fees

Respondents sought $2,499.80 in filing and motion fees, which they claimed under item one of the cost memorandum, and $2,263.40 in jury fees, which they claimed under item two of the cost memorandum. In his motion to tax costs, Buehner argued the filing and motion fees were inflated, as respondents only incurred $995 in filing and motion fees for the first paper filing fee and motion and stipulation filing costs, which should be reduced by $300 because respondents filed motions that were neither reasonable nor necessary. Buehner asserted the filing and motion fees claimed should be taxed by $1,704.50, leaving $695 in allowable costs. With respect to the claimed jury fees, Buehner argued they should be taxed because it was unknown how respondents came up with $2,263.40, as the trial court's records indicated respondents paid only $150 in jury fees, while Triangle and Chiarito paid a total of $4,526.94. Buehner asserted the claim therefore should be taxed by $2,113.40, leaving a net allowable amount of $150.

In their opposition, respondents asserted under a heading entitled, "The $2,499.80 for Filing, Motion & Jury Fees Are Recoverable," the claimed expenses were clearly identified in the supporting documentation. Respondents gave the following as examples of "court filing fees": (a) $435; (b) $65.40 for a motion; (c) $24.20 for a stipulation; (d) $3.60 for an amended complaint; (e) $7.20 for two requests for dismissal; (f) $3.50 for a proof of service; (g) $60 times two, $5.40 times two, $3.60 and $20 for a first amended complaint; (h) $3.60 for a filing fee; (i) "$2,113.47 (jury fees)"; (j) $3.60 times three for proposed and actual special verdict and jury instructions; (k) $3.60 times two for

filing fees; and (*l*) $103.42 for a joint list of instructions. As for Buehner's contention they should be taxed $300 for unreasonable and unnecessary motions, respondents argued the denial of a motion did not mean it was neither reasonable nor necessary. Under a separate heading, respondents argued the $2,263.40 in jury fees were recoverable because the documents they provided supported that amount.

Buehner's reply brief did not address this claim, but at the hearing, Buehner's attorney argued because respondents' opposition admitted $2,113.47 in jury fees was included in their claim for filing and motion fees, the filing and motion fees should be reduced by $2,113.47. The trial court, in addressing the filing and motion fees, noted Buehner was arguing the figure was inflated because some of the fees were for motions that were not reasonably necessary. The trial court declined to tax the filing and motion fees, as it agreed with respondents the denial of a motion did not mean it was unnecessary. With respect to jury fees, the trial court decided to tax the claimed cost by $149.93, as the exhibit attached to Reich's declaration evidenced a jury fee of $2,113.47 was paid.

On appeal, Buehner asserts because respondents admitted in their opposition to the motion to tax costs that the filing and motion fees claimed in item one included $2,113.47 in jury fees and respondents also claimed as jury fees the same amount under item two, the trial court erred by allowing a duplicative recovery of $2,113.47 in jury fees when it refused to tax the filing and motion fees claimed in item one. Buehner argues there is no basis to allow double recovery of jury fees and therefore the total cost award should be reduced by $2,113.47.

It is not clear, however, that the jury fees were included with the filing and motion fees. While the costs respondents listed as examples of court filing fees did include jury fees, when the other costs are added up with the jury fees, the amount exceeds the $2,499.80 claimed. Our review of the billing summary attached to Reich's declaration shows there are additional filing and motion fees that were not included in the example

21

respondents gave in their opposition to the motion to tax costs. Therefore, Buehner has not shown the trial court abused its discretion in awarding both $2,499.80 in filing and motion fees and $2,113.47 in jury fees.

### 4. Service of Process Costs

Respondents sought an aggregate amount of $9,482.95 for costs of service of process. Buehner argued below these costs should be taxed because respondents did not specify who conducted the service and how service was effectuated despite being requested to do so. Buehner pointed out respondents sued at least seven named defendants, but only three went to trial, with the other defendants either being dismissed or settled with respondents agreeing to bear their own costs. Buehner asserted the claimed amount was patently unreasonable, as it broke down to $3,160.98 per defendant.

In their opposition, respondents asserted service on every person was "clearly identified" in the exhibits attached to Reich's and Lucille's declarations, and Buehner failed to provide legal authority that their costs must be reduced because some defendants were dismissed or settled. Respondents argued Buehner was misleading the court by claiming $3,160.98 per person in service of process costs for three defendants, as service of process consisted of multiple legal documents for multiple persons, including all defendants, cross-defendants, and third-party witnesses and custodians of record.

While not addressed in his reply brief, at oral argument, Buehner's attorney argued the invoices showed respondents incurred $638.16 to serve parties who settled with respondents, in which respondents agreed to bear their own costs, which Buehner should not be forced to pay. The attorney further argued: (1) respondents were not entitled to $63.77 incurred to serve Triangle; (2) only $109 was incurred to serve Buehner with a summons; (3) another $109 was incurred to serve Robert Vera, who was a third party; (4) while invoices attached to Lucille's declaration totaled $2,167.04, they did not detail the purpose for the messenger deliveries and clearly were not service of process costs because they likely were incurred to serve documents on other parties; (5) $262.08 was

22

incurred to serve Chiarito, which was not Buehner's responsibility; and (6) the remaining portion of the claimed service of process costs were for messenger fees, which are not service of process fees.

In declining to tax the service of process costs, the trial court explained Buehner did not provide any legal support for his assertion that costs should be reduced because certain parties settled and service costs were incurred not just for service of process of pleadings, but for all other documents and subpoenas.

On appeal, Buehner argues the trial court should have taxed the service of process costs because: (1) $638.16 of the claim was incurred to serve parties who settled with respondents in which respondents agreed to bear their own costs and were not reasonably incurred against Buehner; (2) $63.77 was incurred to serve Triangle; (3) $262.08 was incurred to serve Chiarito; and (4) respondents misclassified messenger fees and expert witness fees as service of process costs, noting the invoices for respondents' two retained expert witnesses are included with the invoices respondents submitted in support of the cost claim. Buehner also asserts respondents' claim is insufficient because they failed to identify who served the process and how it was served.

"Whether and in what amount the expenses for service of process are allowed depends upon who served the process and what amount is allowed to a public officer in this state for such service." (*Nelson*, *supra*, 72 Cal.App.4th at p. 132; § 1033.5, subd. (a)(4).) Since respondents' cost memorandum, which sought $9,482.95 in service of process costs without itemization or explanation and which does not state how the subpoenas were served, it cannot be determined from the face of the cost bill whether the items are proper. (*Nelson*, at p. 132.)

As the cost memorandum was insufficient, on Buehner's objection, it was respondents' burden to establish the necessity and reasonableness of the service costs. Respondents provided a summary of invoices from First Legal, along with the actual invoices, to support the claimed costs, which identified who was served and when. While

23

the invoices do not expressly state how process was served, and neither Reich's nor Lucille's declaration address that issue, the trial court reasonably could infer from the use of a process service company that service was accomplished by registered process server. (*Citizens for Responsible Development v. City of West Hollywood* (1995) 39 Cal.App.4th 490, 506 [no abuse of discretion in awarding service of process costs where the party seeking costs set forth in detail in its cost memorandum each item of service claimed, attached copies of proofs of service to its opposition to the motion to tax costs, and each item was served by a registered process server].)

As for the specific items Buehner challenges on appeal, he has not shown the trial court abused its discretion in declining to tax costs. Buehner asserts he should not be responsible for the costs of serving Triangle and Chiarito, but only makes conclusory allegations as to why he should not be charged and does not cite any authority to support his contention. As for the cost of serving the defendants who settled before trial, with whom respondents agreed to waive costs, Buehner does not have the right to benefit from the cost-waiver provisions of those settlement agreements. (*Nelson*, *supra*, 72 Cal.App.4th at pp. 129–130.) The trial court reasonably could find the costs of service were reasonably necessary to the conduct of the litigation.

As for Buehner's claims respondents misclassified messenger and expert witness fees as service of process costs, Buehner does not identify what invoices were incurred for messenger fees and while respondents provided invoices for expert witness fees and costs with Lucille's declaration, the summary of First Legal's invoices does not include the expert witness fees and costs. The cost summary, which totals $9,532.80 when $2,020.65 in deposition costs are deducted from the $11,553.45 total, provides substantial evidence to support the trial court's award of $9,482.95 in service of process costs. Accordingly, the trial court did not abuse its discretion in declining to tax these costs.

**III.    Order Granting Respondents' Motion to Tax Triangle's Costs**

Triangle submitted a verified cost memorandum seeking a total of $61,134.41: $555 for filing and motion fees; $3,320 for jury fees; $15,951.69 for deposition costs; $4,568.20 for service of process costs; $300 for witness fees; $19,087.29 for court reporter fees; $462.85 for models, enlargements, and photocopies of exhibits; $276.47 for electronic filing or service fees; and $16,612.91 for lodging, food, toll, and mileage costs related to trial, and costs related to CourtCall, overnight delivery, and postal services.

Respondents filed a motion to strike those costs, arguing Triangle was not a prevailing party. Alternatively, and relevant to the issues on appeal, respondents argued Triangle's costs must be apportioned among the defendants and Triangle's deposition costs were duplicative.

After ordering supplemental briefing, the trial court granted respondents' motion to tax Triangle's costs, ordered costs taxed by $53,855.58, and awarded Triangle $7,278.83. On appeal, Triangle challenges several aspects of the trial court's order.

### A.    *Triangle's Burden of Proof*

Triangle contends the order taxing its costs should be reversed because respondents did not support their motion to tax costs with sufficient evidence to show the claimed costs were unnecessary or unreasonable. Triangle points out that while respondents submitted the declaration of attorney Paul Hager in support of their motion, Hager did not address either the reasonableness or the necessity of the cost items. Instead, Hager addressed the events surrounding the taking of the depositions and Chiarito's roll in the litigation. Triangle further points out respondents submitted the declaration of attorney Armand Tinkerian with their supplemental reply brief, in which he stated only that he told Triangle's attorney that court reporter fees should be limited to $55 per day and attorneys cannot claim their lodging or food as costs. Triangle asserts these declarations are insufficient to satisfy respondents' burden of proof.

In their motion, respondents primarily contested Triangle's costs on the ground they needed to be apportioned between Triangle and the nonprevailing defendants, Buehner and Chiarito. Respondents argued the filing fees, jury fees, cost of service of process, and court reporter fees needed to be apportioned, the second round of depositions were not necessary or permissible costs for Triangle's defense of the complaint, no models or enlargements were produced, and the fees for the category labeled "other costs" appeared unnecessary and unreasonable.

In its opposition to the motion, Triangle argued respondents failed to meet their burden of proving the cost items were not allowable. While Triangle submitted declarations from Buehner and its attorneys, Triangle did not supply any invoices or other documentation of the claimed costs. In their reply, respondents argued the entire cost memorandum should be stricken because Triangle failed to produce documents to support its claimed costs. Triangle filed objections to respondents' reply, along with supporting supplemental declarations. Triangle argued it was not obligated to present documentation in support of its cost memorandum because respondents had not made a sufficient objection to shift the burden of proof to Triangle. Triangle's attorney declared the claims for filing and jury fees were supported by the court's online register of actions, while the other components of the cost claim were supported by those invoices the attorney's office was able to locate, which were attached as Exhibit O. The attorney further declared there may be other invoices, but they had not been located.

The trial court, in continuing the hearing on respondents' motion, ordered the parties to address the apportionment standards articulated in *Charton v. Harkey* (2016) 247 Cal.App.4th 730, 743–745.[13] With respect to whether Triangle was required to

---

[13] Under *Charton*, "[a] prevailing party who is represented by the same counsel as a nonprevailing party may only recover those costs the prevailing party incurred and were reasonably necessary to the prevailing party's conduct of the litigation, not the other jointly represented parties' conduct of the litigation." (*Charton*, *supra*, 247 Cal.App.4th at p. 744.) "Whether to award costs that were incurred by both the prevailing party and

26

provide documentation of the costs sought, the trial court explained a proper objection places the cost items at issue and puts the burden on the party seeking costs to support its claim. The trial court stated that since the parties must address the *Charton* issue, Triangle should use the opportunity to support its claimed costs with complete invoices.

With its supplemental opposition, Triangle provided additional invoices its attorney was able to locate, along with copies of checks and bank and credit card statements. In its August 29, 2019 ruling on respondents' motion to tax costs, the trial court found Triangle did not adequately allocate the costs between itself and Buehner and, based on its analysis of the evidence presented in the case, costs would be allocated 50/50 between Triangle and Buehner. With respect to certain cost items, the trial court found Triangle failed to satisfy its burden of showing its entitlement to certain costs, specifically the filing fees, costs of service of process, photocopies of exhibits, and the items claimed under the category of other costs.

The trial court did not err in placing the burden of showing it was entitled to its claimed costs on Triangle. While respondents only addressed the issue of apportionment in their motion papers and not in either supporting declaration, respondents' objection was a proper one that shifted the burden to Triangle to show its costs were reasonably necessary to the conduct of its litigation, as opposed to Buehner. Triangle's memorandum of costs only listed a cost total for each of these items without providing a breakdown of the costs or any detail about them. Therefore, respondents did not have any information about the specific items of Triangle's costs. Without an itemization of those items, as opposed to a mere aggregate dollar amount, there was nothing more

nonprevailing party, and were reasonably necessary to the conduct of the litigation for both the prevailing and nonprevailing party, is left to the trial court's sound discretion based on the totality of the circumstances." (*Ibid.*) A trial court may not make an across-the-board reduction based on the number of jointly represented parties, however, because that fails to consider the necessity or reasonableness of costs as required by section 1033.5, subdivision (c). (*Charton*, at pp. 744–745.)

respondents could have established by declaration or other evidence to show how Triangle should have apportioned its costs or whether the costs were proper. (*Fennessy v. Deleuw-Cather Corp.*, *supra*, 218 Cal.App.3d at pp. 1195–1196 [motion to tax questioning individual defendant's entitlement to deposition costs incurred by all six defendants represented by the same counsel was sufficient to place the cost at issue without additional declarations or affidavits]; *Nelson*, *supra*, 72 Cal.App.4th at p. 132 [when it cannot be determined from the face of the cost bill whether the items were proper, it is the burden of the party seeking the cost of those items to establish their necessity and reasonableness].)

As such, it was Triangle's burden to prove it should be apportioned 100 percent of its costs, most of which were incurred jointly with Buehner, a nonprevailing defendant, after Buehner was added to the lawsuit. Satisfying this burden necessarily required Triangle to present the nature of the costs incurred in each category requested, the associated costs, and explain why they should be apportioned solely to it. The trial court did not abuse its discretion in finding Triangle bore this burden. To the extent respondents articulated other challenges to Triangle's costs, the support for those objections is considered more specifically below.

### B.    Deposition Costs

Respondents challenged the $15,951.69 in claimed deposition costs, arguing they were incurred by other defendants and contained costs solely related to the unsuccessful cross-complaint. Respondents further argued some of the deposition costs were needlessly duplicative because Triangle insisted on retaking many depositions after Buehner was added as a defendant in March 2017. Hager explained in his supporting declaration that after Buehner was added to the lawsuit, defense counsel discovered a conflict of interest and appellants obtained new counsel, who rescheduled most of the prior depositions. Hager claimed the second round of depositions took much longer than the original ones even though they essentially covered the same material.

28

Triangle asserted in its opposition the first round of depositions was limited in scope and inadequate to prepare a defense. According to Triangle, the costs associated with retaking six depositions were reasonable and necessary and would have been incurred regardless of whether Buehner had been named a defendant.

In reply, respondents argued Triangle's failure to provide documentation of its costs was fatal to its request, and the deposition costs must be apportioned among all three defendants so the most Triangle could recover is one-third of the claimed amount. Although Triangle responded by arguing the burden never shifted to it to provide documents to support its cost claims, Triangle provided invoices to support its deposition costs, along with invoices to support its other claimed costs, but it did not summarize the invoices or itemize the deposition costs.

In its supplemental opposition, Triangle reiterated only six depositions were retaken and maintained none of its costs should be apportioned to Buehner. Triangle asserted invoices for the deposition transcripts were included in Exhibit O and the amount requested for depositions included $1,180.32 in mileage and toll charges for travel to Fresno and Merced for depositions.

In their supplemental reply, respondents reasserted retaking depositions after Triangle's new counsel was retained was unnecessary and excessive. They argued no deposition costs should be awarded because Triangle failed to provide supporting documentation. Finally, they contended any award of costs should be minimal as Triangle failed to achieve its litigation goals or the costs should be apportioned between the three defendants who went to trial.

The trial court first noted respondents were not challenging $244.30 of the deposition costs, which were for transcripts obtained before Buehner was brought into the action. The trial court found the second set of depositions was reasonably necessary for the conduct of the case, but it would be unjust to require respondents to pay for two sets of depositions due to Triangle's error; therefore, the remaining depositions would be

29

taxed by the amount of the first depositions. The trial court, however, found it difficult to determine from the invoices Triangle submitted how much was expended on the first depositions, so it divided the remaining deposition costs of $15,707.39 ($15,951.69 minus $244.30) in half, for a total of $7,853.70. The trial court further found, based on the amount of testimony at trial concerning Triangle as opposed to Buehner, the deposition costs should be reduced by 50 percent, for a total of $3,926.85, and awarded a total of $4,171.15 to Triangle for deposition costs.

On appeal, Triangle argues the order taxing its deposition costs must be reversed because the trial court arbitrarily divided the costs in half based on its inability to assess how much was spent on the first round of depositions. Triangle asserts the trial court should have determined from the invoices it filed how much was expended on the depositions or ordered Triangle to do it. Triangle also maintains because respondents did not challenge any of the deposition expenses as "bogus" there was no need to determine whether invoices supported the claimed amount.

We find no abuse of discretion. It is true that the trial court has a duty to determine whether a cost is reasonable in need and amount, and "absent an explicit statement by the trial court to the contrary, it is presumed the court properly exercised its legal duty." (*Thon v. Thompson* (1994) 29 Cal.App.4th 1546, 1548–1549.) But this does not require the trial court to sift through invoices that are not summarized or collated to determine which are offered in support of the claimed costs. Here, the trial court determined Triangle was not entitled to recover the cost of the first round of depositions —a ruling Triangle does not contest. The deposition invoices were interspersed among invoices for other claimed costs, which together totaled approximately 78 pages, and the deposition costs were not summarized. It was not incumbent on the trial court to ascertain which, if any, of these invoices supported the costs for depositions that were not being taxed. Given Triangle's failure to itemize its deposition costs, the trial court, which

30

presided over the trial, reasonably could conclude Triangle should recover only half the claimed costs.

Although Triangle asserts it did not have the burden to produce invoices to support the depositions costs, it was not necessarily the failure to provide invoices that caused the trial court to cut the deposition costs in half. Rather, Triangle failed to itemize the costs so the trial court could readily determine which costs were associated with the first round of depositions. Without such an itemization, it was reasonable for the trial court to estimate the deposition costs by dividing them in half. There was no abuse of discretion.

### C.      *Service of Process Costs*

The trial court granted respondents' motion to tax costs for service of process in its entirety because Triangle did not satisfy its burden of showing entitlement to those costs. Specifically, the trial court found while Triangle submitted invoices in support of the fees, it did not attempt to summarize or collate them.

Triangle argues it was not its duty to summarize and collate the invoices because respondents failed to furnish a declaration to challenge this item. Respondents, however, raised the issue of apportionment of costs between Triangle and the nonprevailing defendants in their motion to tax costs. As such, as we explained above, it was incumbent on Triangle to establish why service of process costs should be apportioned solely to it rather than some portion to Buehner.

Here, the invoices Triangle submitted were not categorized or meaningfully organized. While invoices were not strictly necessary as there was no objection Triangle actually incurred these costs, Triangle still had to establish each of these costs was reasonably necessary to the conduct of its litigation as opposed to Buehner, which required basic details about the costs that would allow the trial court to meaningfully evaluate them in light of the parties' claims and evidence presented at trial.

Without a summarization or collation of the invoices, the trial court was left to sift through more than 100 pages, locate those that might be relevant or related to service of

31

process costs, and ascertain from those invoices who was served, for what purpose, at what cost, compare that information with the arguments in Triangle's brief, and assess it in light of the claims and evidence presented at trial. Triangle therefore did not satisfy its burden to show how these costs were reasonably necessary to the conduct of its litigation and the trial court did not abuse its discretion in taxing all of Triangle's service of process costs.

### D. Witness Fees

Respondents argued in their motion the $300 in witness fees Triangle sought needed to be apportioned among Triangle and the other defendants. In their supplemental reply brief, respondents argued the witness fees should be reduced and apportioned because their testimony benefitted Buehner as well as Triangle. The trial court taxed the witness fees down to $35 pursuant to Government Code section 68093, and apportioned the fee by 50 percent, for a total amount of $17.50.

On appeal, Triangle asserts the trial court overlooked the fact there were three witnesses and Government Code section 68093 authorizes mileage costs in addition to the $35 limit per witness. Triangle points to copies of three checks written to three witnesses—Alvin Smith, Jose Trevino, and David Sweet—which total $300, that was included among the documents provided with Triangle's supplemental opposition. Respondents do not challenge this claim on appeal.

Government Code section 68093 provides that "witness' fees for each day's actual attendance, when legally required to attend a civil action or proceeding in the superior courts, are thirty-five dollars ($35) a day and mileage actually traveled, both ways, twenty cent ($0.20) a mile." As there were multiple witnesses paid who were eligible for reimbursement for mileage, the trial court's conclusion that only one $35 fee was permissible under the statute was incorrect. While respondents argued in their supplemental reply brief that Triangle failed to show the witness fees were reasonable, which respondents did not argue in their motion, it was respondents' burden to provide

32

more than a conclusory allegation. Therefore, Triangle was entitled to $300 in costs for witness fees. The apportionment, however, was well within the court's discretion based on its assessment of the trial testimony, and Triangle does not challenge that aspect of the trial court's order. Applying the 50 percent apportionment the trial court adopted, Triangle is entitled to $150 in witness fees and mileage costs.

## IV.    Respondents' Motion for Sanctions

Respondents filed a motion for sanctions against Triangle and Buehner for the filing of a frivolous appeal. Section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Likewise, rule 8.276(a) provides that an appellate court has authority to "impose sanctions … on a party or an attorney for: [¶] Taking a frivolous appeal or appealing solely to cause delay…."

As explained by our high court, an appeal should be deemed "frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputedly has no merit—when any reasonable attorney would agree that the appeal it totally and completely without merit. [Citation.] [¶] … [T]he punishment should be used most sparingly to deter only the most egregious conduct." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650–651.)

The appeal was not frivolous. Although the parties are in vociferous disagreement on certain issues, we find nothing in the briefs that suggest the appeal was prosecuted for an improper motive. Respondents' motion for sanctions is denied.

## DISPOSITION

The trial court's July 31, 2019 order taxing respondents' costs is modified insofar as the trial court improperly awarded costs for models, blowups, and photocopies of exhibits and declined to tax a portion of the deposition costs. The matter is remanded to the trial court with directions to strike the $7,231.07 awarded for models, blowups, and

33

photocopies of exhibits; tax the deposition costs by $2,659.58; and award total costs to respondents in the amount of $24,660.59.

The trial court's August 29, 2019 order taxing Triangle's costs is modified insofar as the court improperly taxed witness fees. The matter is remanded to the trial court with directions to vacate that part of the order taxing witness fees by $282.50 and awarding $17.50 in witness fees, and instead tax the witness fees by $150 and award $150 for witness fees; and award total costs to Triangle in the amount of $7,411.33.

In all other respects, the trial court's July 31, 2019 and August 29, 2019 orders are affirmed. The parties shall bear their own costs on appeal. (Rule 8.278(a)(3).)


                                                          DE SANTOS, J.

I CONCUR:


LEVY, ACTING P. J.


34

MEEHAN, J., Concurring and Dissenting.

I concur and join with the majority's opinion as to Triangle's costs in part III. of the Discussion as well as the majority's conclusions in part IV. of the Discussion. I respectfully part company with the majority, however, in its interpretation of California Rules of Court, rule 3.1700(a)(1) (rule 3.1700(a)(1)). Because the word "verified" is a term of art that means to be sworn, I am unable to conclude, as the majority does, that respondents' cost memorandum[1] complied with rule 3.1700(a)(1) as it was neither sworn nor certified under penalty of perjury. For this reason, I dissent from part II. of the Discussion of the majority's decision.

## I.      Interpretation of Rule 3.1700(a)(1)

### A.      Standard of Review

My interpretation of rule 3.1700(a)(1) is necessarily grounded in the principles of statutory construction. The Judicial Council is authorized to adopt rules for court administration, practice and procedure, and perform other functions prescribed by statute. (Cal. Const., art. VI, § 6, subd. (d).) The Judicial Council rules are treated with the dignity as statutes so long as they are not inconsistent with legislative enactments or constitutional provisions. (*In re Richard S.* (1991) 54 Cal.3d 857, 863.) If a rule is inconsistent with a statute, the statute controls. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 532; *In re Alonzo J.* (2014) 58 Cal.4th 924, 937.) Courts "independently review interpretations of California Rules of Court, applying the usual rules of statutory construction." (*In re William M.W.* (2019) 43 Cal.App.5th 573, 583; accord, *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 902 ["The ordinary principles of statutory construction govern our interpretation of the California Rules of Court."].)

---

**1**      I use the terms "cost memorandum," "memorandum of costs" and "cost bill" interchangeably.

The familiar rules of statutory interpretation are well established. "'"When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body." [Citation.] "'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls."'" (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304.) "[W]hen the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.)

### B.  Plain Language of Rule 3.1700(a)(1) Unambiguously Requires a Cost Memorandum To Be Sworn

#### 1.  "Verified" is a Term of Art

In construing rule 3.1700(a)(1), I begin with the text of the rule itself. Rule 3.1700(a)(1) requires that a memorandum of costs "be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case." The majority ascribes a general lay definition to the word verified as meaning to demonstrate or to support. Applying this meaning, the majority concludes so long as a cost memorandum is supported by the requisite statement that the items of cost are correct and necessarily incurred, the memorandum is properly verified. While this reflects a well-established interpretive principle that words or phrases in a statute should be given their usual and ordinary dictionary meaning (*In re Friend* (2021) 11 Cal.5th 720, 730), this canon of construction yields to a technical-meaning exception when words have acquired a peculiar meaning in

2.

the law (*ibid.*; accord, *Brown v. Superior Court* (2016) 63 Cal.4th 335, 351; see Civ. Code, § 13 [words and phrases are to be construed according to "approved usage," but "such others as may have acquired a peculiar and appropriate meaning in law … are to be construed according to such peculiar and appropriate meaning"]; accord, Code Civ. Proc., § 16).[2]

"Terms of art 'are words having specific, precise meaning in a given specialty.'" (*People v. Gonzales* (2017) 2 Cal.5th 858, 871, fn. 12.) When a drafting body uses a term of art, we presume the drafter was aware of the ramifications of its choice of language. (*Creutz v. Superior Court* (1996) 49 Cal.App.4th 822, 828–829 [word "confession" has a distinct meaning in criminal law whose meaning Legislature was presumed to be aware].) The word "verified" utilized repeatedly in the Code of Civil Procedure has a specific and long-standing meaning, although it is not defined by statute. In multiple statutory contexts, including historically for a memorandum of costs, verified or verification refers to a sworn statement or one that is certified under penalty of perjury.

Originally enacted in 1872 and similar to its current form, section 446 requires that certain pleadings "shall be verified" and specifies that this verification shall be by affidavit: "and where a pleading is verified, it shall be by the affidavit of a party" or, in certain circumstances, verified by the affidavit of an attorney or other person with knowledge of the facts (*id.*, subd. (a)). Since 1955, the statute permits this verification requirement to be fulfilled alternatively by asserting the truth of the matters under penalty of perjury. (*Ibid.*; see Stats. 1955, ch. 873, § 1, p. 1488.)

Since at least 1873, and up until its repeal in 1986, former section 1033 provided that a memorandum of costs "must be verified by the *oath* of the party" or an attorney or agent stating to the best of that person's knowledge and belief the items are correct and

---

**2**    All further statutory references are to the Code of Civil Procedure, unless indicated otherwise.

have been necessarily incurred in the action. (Stats. 1872, Code Amendments (1873–1874), ch. 383, § 139, pp. 343–344, italics added; Stats 1899, ch. 20, § 1, pp. 21–22; Stats. 1929, ch. 482, § 3, p. 846; Stats. 1931, ch. 860, § 1, p. 1761; Stats. 1933, ch. 744, § 192, p. 1902; Stats. 1937, ch. 550, § 1, p. 1579; Stats. 1945, ch. 828, § 5, p. 1527; Stats. 1951, ch. 1737, § 142, pp. 4135–4136; Stats. 1955, ch. 513, § 1, p. 991; Stats. 1967, ch. 1230, § 2, pp. 2997–2998; Stats. 1970, ch. 602, § 1, p. 1182; Stats. 1982, ch. 812, § 2, p. 3102.)

Historically, verifying by oath was accomplished by using sworn affidavit procedures. (See *Ray v. Clark* (1922) 57 Cal.App. 467, 468 [attorney affidavit attached to the cost memorandum]; see also *Snodgrass v. Snodgrass* (1930) 103 Cal.App. 412, 413 [purported affidavit of verification signed by attorney, but jurat was not completed].) For 150 years, California law has defined an affidavit as "a written declaration under oath" (§ 2003), taken by "any officer authorized to administer oaths" (§ 2012). This statutory prerequisite of a sworn verification was no doubt a reflection that cost memoranda were to establish factual matters in legal proceedings, and, although hearsay, the sworn nature of the document provided it with indicia of reliability and trustworthiness warranting its consideration as evidence.

Courts employed the term "verified" to reflect the sworn nature of cost memoranda and built an evidentiary burden-shifting framework predicated on the concept that a facially proper "verified" cost memorandum has evidentiary value. (See, e.g., *Miller v. Highland Ditch Co.* (1891) 91 Cal. 103, 105–106 [uncontroverted "verified" cost bill that appears facially proper should control decision of the court; but when charges are facially improper, burden is on claimant to introduce further evidence to justify and sustain charges]; *Haydel v. Morton* (1937) 18 Cal.App.2d 695, 696 ["verified memorandum" is prima facie evidence that properly appearing charges were sustained; if evidence is uncontroverted, memorandum is sufficient in form and substance to sustain award of costs]; *Oak Grove School Dist. v. City Title Ins. Co.* (1963) 217 Cal.App.2d

4.

678, 698–699 [facially proper "verified" memorandum is prima facie evidence of costs necessarily incurred by claimant, and burden of showing item not properly chargeable is on opposing party; if opposing party challenges memorandum by affidavit or other evidence, then burden is on claimant to show items charged were necessary and material to the action].)

When the Legislature overhauled the cost award provisions in 1986, it repealed section 1033 and enacted, among other sections, section 1034, subdivision (a), which provides that allowable prejudgment costs are to be claimed and contested in accordance with the rules adopted by the Judicial Council. (Stats. 1986, ch. 377, §§ 10, 15, pp. 1579–1580.) Consistent with the well-established statutory terminology and extensive case authority, the Judicial Council promulgated a rule that required cost memoranda be "verified." While the repealed section 1033's use of the phrase "verified by the oath of the party" was not incorporated into the Judicial Council's subsequent and former rule 870 (now rule 3.1700), it nevertheless retained the "must be verified" requirement, as it does currently.

The promulgation of this rule produced no discernible reaction from courts that a "verified" cost memorandum as articulated under the new rule meant something different than it always had under the statute. Courts continued to rely on the case authority developed under the statute to treat a "verified" cost memorandum as prima facie evidence of costs incurred, and employed the same burden shifting framework—all of which was predicated on a *sworn* cost memorandum. (See, e.g., *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 762, 774.) This reliance was logical because there was no basis for courts to assume the new rule's use of the term "verified" had morphed into something different than the statute had always required.

What is more, the specific legal meaning of "verified" is not unique to the cost memorandum context. In every statutory context of which I am aware, the word "verified," even without an express sworn oath or affidavit requirement, has long been

understood to mean a sworn statement. For example, as originally enacted in 1931, repealed section 53052 of the Government Code provided that claims for injury or damaged property as a result of a dangerous or defective condition of a public property must be presented by "a verified claim for damages." (Stats. 1931, ch. 1167, § 1, pp. 2475–2476.) In *Hoffman v. City of Palm Springs* (1959) 169 Cal.App.2d 645, the court explained "'[t]he term "verified," as applied to claims against municipalities [pursuant to Government Code, repealed section 53052], has a settled meaning, and refers to an affidavit attached to the claim, as to the truth of the matters therein set forth. [Citations.] The chief test of the sufficiency of an affidavit is whether it is so clear and certain that an indictment for perjury may be sustained on it if false. [Citations.]'" (*Id.* at pp. 648–649.) A few years later, this was echoed in *Sheeley v. City of Santa Clara* (1963) 215 Cal.App.2d 83, 85 (*Sheeley*).

Likewise, several statutes pertaining to writ petitions each require a "verified" petition. (§§ 1069, 1086, 1103, subd. (a).) Much like repealed section 53052 of the Government Code, these statutes do not specify the nature of the verification. And, just like repealed section 53052 of the Government Code, case authority has interpreted "verified" to mean sworn by affidavit. (*Star Motor Imports, Inc. v. Superior Court* (1979) 88 Cal.App.3d 201, 203–204 (*Star Motor*) [verification under § 1086 requires an affidavit verifying the truth of the matters covered in it and may not be made upon "'information and belief'"]; *Perlman v. Municipal Court* (1979) 99 Cal.App.3d 568, 573 [§ 1103 requires affidavit verifying the truth of the matters covered]; *New York Knickerbockers v. Workers' Comp. Appeals Bd.* (2015) 240 Cal.App.4th 1229, 1236 [§ 1069 petition requires affidavit verifying truth of matters covered by it], citing *Star Motor, supra*, at p. 204 & *Seckels v. Department of Industrial Relations* (1929) 98 Cal.App. 647, 648.)

Examination of this history compels me to the conclusion that "verified" is a term of art with a well-known and definite legal meaning that long predated any formulation of

rule 3.1700(a)(1). By incorporating the word "verified" into its rule, there is an interpretive presumption the Judicial Council intended the word to have the same meaning it had been ascribed by the statute for more than a century and the case authority developed under the statute. (See *Brown v. Superior Court, supra*, 63 Cal.4th at p. 351 [""The rule of construction of statutes is plain. Where they make use of words and phrases of a well-known and definite sense in the law, they are to be received and expounded in the same sense in the statute.""]; see also *Air Wisconsin Airlines Corp. v. Hoeper* (2014) 571 U.S 237, 248 ["'[I]t is a cardinal rule of statutory construction that, when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it is taken.'"].)

If the Judicial Council had intended to eliminate the traditional sworn statement requirement for cost memoranda, it could have selected among several other terms in crafting the rule. For example, the rule could have been written to require that the memorandum of costs be *supported* by a statement of the party; or that the memorandum of costs *include* a statement of the party; or that the memorandum of costs must be *signed* by a statement of the party. Instead, the rule requires that a "memorandum of costs must be *verified* by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case." (Rule 3.1700(a)(1), italics added.) An interpretation of the rule should give effect to the term of art the Judicial Council selected. (See *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 55 [courts should ordinarily reject interpretations that render particular terms of a statute mere surplusage; courts should instead give every word some significance].)

## 2. The Operation of Section 2015.5 Does Not Bear On the Interpretation of Rule 3.1700

In light of the specific and long-settled meaning of "verified" in this and all other statutory contexts of which I am aware, I cannot agree that a "verified" cost memorandum under rule 3.1700(a)(1) means anything less than it always has—a *sworn* statement attesting the items of cost are correct and necessarily incurred. Buehner argues the *only* way to verify a cost memorandum is to sign it under penalty of perjury as required under section 2015.5, but this confuses a modernized procedure with the historic and specific meaning of the term verified.

In 1957, the Legislature enacted section 2015.5, which provides a permissive alternative to sworn statement requirements. Under section 2015.5, when parties are legally required to provide a sworn statement of some kind—e.g., a verified cost memorandum—the statute provides for an alternative certification under penalty of perjury that must be accepted as the legal equivalent to a sworn statement. Thus, since 1957, parties submitting cost memoranda have had a choice: they may provide a verified memorandum by a sworn oath-and-affidavit procedure *or* they may submit a memorandum with an unsworn certification under penalty of perjury, which is treated as "verified"—i.e., sworn. Parties may *not*, however, elect to do neither.

The majority rejects Buehner's argument by noting that section 2015.5 is not inconsistent with their interpretation of rule 3.1700(a)(1), and they point out section 2015.5 does not prescribe the sole necessary form of verification. While these are correct observations and responsive to Buehner's conflated argument, they do not bear on the interpretive analysis. The established meaning of "verified" and the specific form it must take in the prejudgment cost memorandum context flow from the original prejudgment cost statute, the case authority developed under it, and the many other consistent statutory uses of the term; it does not derive from section 2015.5. Rather, section 2015.5 mentions "verification" in providing a nonexhaustive list of actions or

8.

statements that might be required to be sworn under a law, rule, order or regulation of this state. Indeed, when various provisions of the Code Civil of Procedure—including repealed section 1033—require something to be "verified," it must be sworn. This is when section 2015.5 becomes operative and offers a certification under penalty of perjury as an alternative.

Section 2015.5 helps explain why the parties frame their arguments around whether cost memoranda must be certified under penalty of perjury, but it provides no insight into the substantive interpretation of rule 3.1700(a)(1).

### C. The Most Reasonable Interpretation of Rule 3.1700(a)(1) Requires a Cost Memorandum To Be Sworn

Rule 3.1700(a)(1)'s utilization of the word "verified" plainly requires a cost memorandum to be sworn—as has been required since at least 1873. But even if I were inclined to agree that rule 3.1700(a)(1)'s use of the word "verified" is ambiguous and subject to more than one reasonable interpretation, I would nonetheless conclude the interpretation that cost memoranda must be sworn is most reasonably consistent with the purpose of the rule. (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 (*Gattuso*).) A different interpretation—that a "verified" cost memorandum must be merely *supported* by a statement that the costs listed were correct and necessarily incurred—creates concerning consequences. The initial of these is evidentiary, which I will address first, but I have related and equal reservations about how such an interpretation affects our fidelity to a long-standing, developed body of caselaw and how it implicates fairness to parties opposing cost requests.

Importantly, a memorandum of costs is a hearsay document used to establish matters in a judicial proceeding; being "verified" by a sworn statement—or, alternatively, certified under penalty of perjury in conformity with section 2015.5—is a necessary prerequisite to better ensure its trustworthiness and reliability. "In judicial proceedings, the trustworthiness of the evidence and the reliability of the factfinding process depend

9.

upon the notion that persons who possess relevant information appear in court and undergo cross-examination." (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 608 (*Kulshrestha*).) The conditions for live testimony—such as the witness's capacity to understand the duty to tell the truth and the promise under oath or penalty of perjury to testify truthfully—convey the need for honesty and the sanction for false testimony. (*Ibid.*) When statements are not made by a witness testifying in court before the factfinder, they are hearsay when offered for their truth and are, therefore, less reliable. (*Ibid.*) In limited judicial proceedings, however, hearsay evidence—particularly written statements—may serve as the sole or primary evidence of relevant facts. (*Id.* at p. 609.) Oath-taking procedures, such as for affidavits or, alternatively, certifying statements under penalty of perjury, are essential to help prevent perjury. (*Ibid.*) Stemming from these concerns as to hearsay documents, the high court in *Kulshrestha* held that a declaration offered to defeat summary judgment that does not materially conform to section 2015.5's unsworn declaration requirements is invalid and inadmissible as evidence. (*Kulshrestha, supra*, at p. 618.)

Based on similar considerations, the court in *Star Motor* rejected a writ petition verified by counsel "'under penalty of perjury, *upon information and belief*'" and dismissed the proceedings. (*Star Motor, supra*, 88 Cal.App.3d at p. 203.) The court explained an affidavit based on "'information and belief'" is hearsay; although section 446 allows verification on information and belief, that section relates to pleadings that do not serve as proof of facts. (*Star Motor, supra*, at p. 204.) The court pointed out that an affidavit that is to be used as evidence serves a different purpose—a ruling of a court that is to be based on facts cannot be based upon the belief of the affiant. (*Ibid.*) Often, the court explained, the petitioner's entitlement to relief will depend on the factual showing based on the verified papers of the applicant. (*Id.* at p. 205.)

A memorandum of costs serves a similar purpose to the writ petition or a declaration in a summary judgment proceeding in that it provides evidence for the court

10.

to make a factual determination about a cost award. Interpreting "verified" to mean anything less than a *sworn* attestation entirely undermines a cost memorandum's evidentiary value. (See e.g., *Barnhart v. Kron* (1891) 88 Cal. 447, 449–450 [memorandum of costs supported by affidavit of attorney, "unless controverted, should control the decision of the court"].) If a "verified" cost memorandum does not mean one that is sworn, as it always has, then the memorandum and all of its contents are merely hearsay statements without any hallmark of trustworthiness or reliability that a sworn statement provides. The memorandum becomes nothing more than a note to the court with no evidentiary force—it simply cannot serve as prima facie evidence sufficient on its own to support an award of costs just because it appears facially proper and is unopposed. While the formality of a sworn document may *seem* like an inconsequential act, it is an essential prophylactic against perjury and provides a layer of reliability and trustworthiness to hearsay documents admissible in a legal proceeding and used by the courts to make factual determinations.

Blended with this, giving evidentiary weight to unsworn cost memoranda necessarily disturbs a developed body of caselaw around the burden-shifting framework on which prejudgment cost decisions have long been predicated. Inasmuch as caselaw has indelibly treated a sworn and facially proper cost memorandum as prima facie evidence, it has also dictated such a memorandum operates to shift the burden to the opposing party to prove the costs are not correct, unreasonable or unnecessarily incurred. (See, e.g., *Wilson v. Nichols* (1942) 55 Cal.App.2d 678, 682–683.) To shift the burden of proof to the opposing party based on an unsworn cost memorandum is akin to placing the burden on the challenger at the outset. Moreover, if the claimant is not required to provide a sworn statement of costs, there is no legitimate basis to require the challenging party to produce admissible evidence to properly contradict issues of fact in the cost memorandum. The burden-shifting framework, the fairness to the challenging party, and integrity of the court's decision-making all rest on a verified—i.e., sworn—cost

11.

memorandum. (See *Gattuso, supra*, 42 Cal.4th at p. 567 [where language is ambiguous, court should consider consequences of each possible construction and should infer enacting body intended interpretation producing practical and workable results, not one producing absurdity or mischief].)

Defining "verified" to mean something less than a sworn statement also creates a peculiar inconsistency with all the other uses of the word "verified" in the Code of Civil Procedure I have identified, and it would be an anomaly among cost award procedures the Legislature has articulated historically and currently. For example, a memorandum submitted for an award of *post*judgment costs related to judgment enforcement must be "executed under oath." (§ 685.070, subd. (b).)[3]

I am similarly unconvinced that the Judicial Council forms highlighted by the parties offer any conclusive or persuasive insights into the Judicial Council's intent with respect to rule 3.1700(a)(1)'s "verified" requirement. Optional form MC-010 for prejudgment costs and mandatory form APP-013 for appellate costs were both created pursuant to rule 3.1700(a)(1). (See § 1034, subds. (a)–(b); Cal. Rules of Court, rule 8.278(c)(1).) Form APP-013 contains a penalty-of-perjury recital while form MC-010 does not. Even if I could conclude that these forms, standing alone without any additional information, are a reflection of the Judicial Council's intent with respect to rule 3.1700(a)(1) and the word "verified," they point equally in different directions.

Nor am I persuaded interpreting "verified" to mean a sworn statement will disrupt the administration of cost awards given the omission of a penalty-of-perjury recital on form MC-010. Despite its decades-long existence, the use of form MC-010 has remained optional. This record sheds no light on how the Judicial Council envisioned its use, how

---

**3** Notably, Judicial Council Forms, form MC-012 for postjudgment costs contains a penalty-of-perjury recital, in keeping with section 685.070, subdivision (b)'s requirement that such a memorandum be executed under oath.

Further references to forms are to Judicial Council Forms.

extensively the form is actually utilized, or whether most parties or attorneys certify it under penalty of perjury as appellants did here. Perhaps many parties and their attorneys elect to submit their own cost memorandum in the prejudgment costs context because, unlike appellate costs, prejudgment costs can be extensive in variety and number of items, which possibly cannot be thoroughly reflected on the form.

For example, as the majority astutely points out in its analysis with respect to Beuhner's motion to tax, respondents' memorandum of costs submitted on form MC-010 failed to give any itemization of the amount sought for models, blowups and photocopies of exhibits rendering the memorandum facially deficient in that regard. Although respondents did not do so here, where there are large numbers of items of cost within a category, it may be that parties frequently supplant the form with their own declaration— for the very reason at issue with respondents' memorandum here—to provide adequate details about their costs. In the end, form MC-010's lack of a penalty-of-perjury recital may have little practical significance if parties are otherwise certifying it under penalty of perjury or are electing to submit their own cost memoranda certified under penalty of perjury.

### D.  Conclusion

In sum, I find rule 3.1700(a)(1)'s inclusion of the word "verified" plainly requires cost memoranda be sworn. Even if the term "verified" was ambiguous or created an ambiguity, the long-standing meaning of the term in this and every other statutory context establishes the most reasonable and workable interpretation of "verified" is to be sworn. This not only creates consistency with the extensive caselaw built on the predicate foundation a "verified" cost memorandum is one that is sworn, but it is also consistent with other uses of the term in the Code of Civil Procedure and aligns with the requirements for requesting an award of postjudgment costs. Finally, and importantly, it maintains the evidentiary value of cost memoranda and reinforces to claimants the importance of accuracy and truthfulness in making cost requests.

## II. Cost Memorandum Was Not Verified in Substantial Compliance With Rule 3.1700(a)(1)

While the trial court found that respondents' memorandum of costs substantially complied with rule 3.1700(a)(1)'s verification requirement, I reach a different conclusion. In some instances, technical deficiencies with verification requirements may be deemed substantially compliant. For example, in *Sheeley*, the claimant verified a claim under repealed section 53052 of the Government Code by following the affidavit procedures and swearing upon oath before her attorney (acting as notary) that the claim was true. (*Sheeley, supra*, 215 Cal.App.2d at pp. 84–85.) The attorney, however, submitted an acknowledgment form rather than the verification form. (*Id.* at p. 85.) The appellate court concluded this was substantial compliance with the verification requirement because the oath had actually been taken, and the city had been notified of the fact of verification. (*Id.* at p. 86.)

In *Pacific Southwest Airlines v. Dowty-Rotol, Ltd.* (1983) 144 Cal.App.3d 491 (*Pacific Southwest*), the party seeking prejudgment costs provided a verification stating only that the information in it was true. (*Id.* at p. 495.) The court concluded "the verification substantially met the requirement" under former section 1033 that required verification "to the best of [the signor's] knowledge and belief, the items claimed as costs are correct." (*Pacific Southwest, supra*, at p. 495.) There was no indication, however, the statement was not sworn or certified under penalty of perjury.

In this case, the required statement—attesting the costs were correct and necessarily incurred—conformed to rule 3.1700(a)(1) generally, but it was not verified— i.e., not sworn or certified under penalty of perjury. The failure to provide a sworn statement or, alternatively, one certified under penalty of perjury cannot substantially comply with a requirement to do so—without it, the memorandum of costs is an evidentiary nullity. (See *Kulshrestha, supra*, 33 Cal.4th at p. 618 [declaration invalid and not admissible as evidence when signed under penalty of perjury in a manner that

14.

materially deviated from § 2015.5's requirements]; see also *Snodgrass v. Snodgrass, supra*, 103 Cal.App. at p. 414 [reversing denial of motion to strike unverified memorandum of costs because oath jurat was not signed by officer having power to administer it or anyone else].)

### III. Counsel's Subsequent Declaration Did Not Cure the Verification Defect

The majority concludes that Reich's declaration offered in response to Buehner's motion to tax respondents' costs was sufficient to cure any verification defect in the memorandum. While I agree generally that verification defects in the original memorandum of costs can be cured, I respectfully disagree any such cure was accomplished here.

Although mandatory, the deadline to file a memorandum of costs is not jurisdictional, and it can be amended after the deadline has expired. (*Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.* (1990) 223 Cal.App.3d 924, 929 [deadline for filing cost memorandum not jurisdictional]; *Pacific Southwest, supra*, 144 Cal.App.3d at p. 495 [trial court did not abuse discretion in accepting an amended verification of a memorandum of costs]; see generally *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1527–1528 [holding trial court should have permitted party to cure any perceived defect in attorney's declaration when attorney offered to do so at oral argument on dispositive motion].)

Reich offered a declaration in opposition to Buehner's motion to tax, but that declaration did not attest to the correctness and the necessary incurrence of the costs listed in the cost memorandum, it attested that all of the bills listed in the statement attached to the declaration were necessary and proper expenses. As it turns out, those are not one in the same thing. In reviewing Buehner's motion to tax, the majority points out the documentation attached to Reich's declaration does not align with the totals claimed in the cost memorandum in significant respects.

Moreover, as the majority notes, Reich's declaration was deficient because it was not properly sworn under penalty of perjury in the manner required under section 2015.5. While I agree Buehner's lack of objection to the defect in Reich's declaration forfeited any claim the trial court erred in relying on the declaration to assess costs, the declaration was nonetheless legally deficient. The defective declaration cannot, as a matter of law, cure the nearly identical defect in the cost memorandum. And, in any event, Reich's declaration was never offered for the purpose of curing the unverified cost memorandum, and, therefore, Buehner did not have an appropriate opportunity to object to its use on that basis.

## IV.    Prejudicial Error

To prevail on appeal, an appellant must establish both error and prejudice from that error. (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597.) The existence of additional documentation offered to support respondents' cost memorandum in this case leads to a question of whether the verification defect may be deemed harmless. (Cal. Const., art. VI, § 13 [no judgment shall be set aside unless the error has resulted in a miscarriage of justice]; Evid. Code, § 353 [no verdict, finding, judgment or decision shall be reversed unless admitted evidence should have been excluded and resulted in a miscarriage of justice]; *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491, 500 (*O'Hearn*) [miscarriage of justice should only be declared when, after examining the entire cause, including the evidence, it is reasonably probable a result more favorable to appealing party would have been reached in absence of the error].)

On one hand, had the trial court stricken the cost memorandum as unverified, it would have had no occasion to reach the supporting documentation and ultimately award costs. In that sense, any award of costs to respondents is prejudicial to Buehner. On the other hand, all costs were put at issue by Buehner and the respondents provided evidence

16.

to support the totals sought in the memorandum. To the extent cost items were proven by further evidence, the error is likely subject to a harmless error analysis.

Nonetheless, no matter how I examine the effect of the error, I arrive at the conclusion the failure to strike the memorandum of costs was harmful to Buehner because respondents were permitted to recover costs sought in the memorandum that were never properly verified *or* proven. All categories of respondents' costs were challenged by Buehner in his alternative motion to tax the memorandum of costs, and respondents provided two declarations with attached documentation in response. As the majority articulates well, not all the costs sought for deposition and for models, enlargements and photocopies of exhibits were fully substantiated with additional documentation, yet the trial court awarded the total requested for these cost items exactly as it appeared in the cost memorandum. Further, although not an issue on appeal with respect to Buehner's motion to tax, my examination of the supporting documentation substantiates only about half of the $2,499.80 in filing and motion costs sought in the cost memorandum and awarded.[4] Since the additional documentation did not substantiate these costs, the trial court necessarily relied exclusively on the unverified cost memorandum to award them. That resulted in harm to Buehner.

---

[4]    In concluding respondents' cost memorandum was unverified and, thus, the motion to strike should have been granted, I do not reach the trial court's ruling on Buehner's alternative motion to tax. I refer above to the majority's analysis with respect to Buehner's alternative motion to tax because it is relevant to my assessment of prejudicial error. (*O'Hearn, supra*, 115 Cal.App.4th at p. 500 [state law error assessed by *examining the entire record* to determine whether it is reasonably probable that a result more favorable to the appealing party would have been reached absent the error].) In reviewing the entire record, the award of deposition costs, the costs awarded for models, blowups and photocopies of exhibits, and the costs associated with motion and filing fees are not fully and properly substantiated by the supporting documentation. To the extent unsubstantiated properly by supporting evidence, such costs were necessarily awarded solely based on the unverified cost memorandum, which resulted in harm to Buehner.

Notably, this issue circles back to my evidentiary concerns about unverified cost memoranda. Despite the shortcomings in the additional evidence, the trial court nonetheless awarded the exact total sought in the cost memorandum in making its award of filing and motion costs, deposition costs, and the costs of models, enlargement and photocopies of exhibits. This highlights the risk of unverified cost memoranda—they can be ascribed evidentiary weight and can sometimes drive an award of costs even when those costs are neither verified nor adequately proven with additional evidence. I hasten to note nothing in the record indicates the unsubstantiated costs here were anything but good faith mistakes. Yet, this is exactly why the sworn nature of the cost memorandum is important—it reminds all claimants and their attorneys of the need for accuracy and the grave responsibility they have with respect to the truth and correctness of the costs being sought. (See *Kulshrestha, supra*, 33 Cal.4th at p. 609 [declarations under penalty of perjury ensure witness understands grave responsibility assumed with respect to the truth].)

Based on the foregoing, I respectfully dissent from the majority's conclusions in part II. of the Discussion, but concur with the majority's conclusions in parts III. and IV. of the Discussion.


MEEHAN, J.


18.